May it please the court, in the limited time I have here this morning, I want to focus on the issue of materiality of the interrelated Brady, Giglio, and Maypoo v. Illinois claims that emerged during approximately seven years of discovery and litigation of this claim before the district court here in St. Louis. Although there were some disputes about some of the facets of the claim, there are two clear violations. One is the Brady violation regarding the undisclosed payment to the state's star witness Jeffrey Shockley. The other due process issue that there can be really no serious dispute about is that Mr. Shockley lied at the trial when he told the jury that he had disposed of his gun that was involved in the shootout that led to the death of Freddie Chu. So now the payment that you were referring to, is that the hotel expense and relocation expenses? Yes, there was over $2,000 paid to Jeffrey Shockley, $700 and change was for him to stay in a hotel, and the other $1,300 appears to be for rent on a new apartment for him and his mother. And this didn't come to light until after the hearing when some things came out and these documents were disclosed to us after the hearing. We had some evidence that he was paid, and it was interesting because these checks were on two different sources. One was some sort of asset forfeiture account from the St. Louis City Police Department, and another was through the Victim Services Division of the Circuit Attorney's Office. Clearly, this would be Brady material under the Banks case, the Supreme Court case, and under several precedents from this court. Now, if that had been delved into by the attorneys, what would have been the explanation for the payments? Well, the thing about it was he denied it. The witness denied it, and it would have been really effective impeachment. He denied that he got anything from his testimony and was doing it solely out of duty and loyalty, I guess, to his friend who was killed. But I think the important thing to keep in mind is that would have cast the case in a totally different light because there was really nothing done to seriously damage his credibility. Counsel, this leads into a problem I have with the case, which is how to factor in our decision in panel decision in White v. Steele. Was there an evidentiary hearing in this case? Yes, there was an evidentiary hearing in this case, and in fact the... Then would you please tell me briefly what facts were developed here that were not before the panel in White v. Steele, and what issues, if any, are you raising that were not considered by the panel there? The primary issue is the perjured testimony claim involving Jeffrey Shockley and the gun, and that was not present in Mr. White's case at all. So that's the primary distinguishing fact. I thought that was the only one, and you're agreeing. There's considerable overlap on the other Brady-type violations. That's correct, Judge. Well, I want to know what factual overlap there is not. Is there total factual overlap? With the monetary payment, the understanding regarding Mr. Shockley's pending charge, those two are the same, and also there's another aspect of the claim involving Mr. Shockley's agreement to testify against his own brother in a vehicular manslaughter case, which... But that was discussed by the panel. Right. So those three are in common. The distinguishing issue in this case, additional issue, is the due process claim involving the perjured testimony of Jeffrey Shockley that he had thrown the gun away and never retrieved it when he got arrested with the gun three weeks later and ballistics matched it to the shell casing at the scene. And I think if you look at everything cumulatively, this would have all cast the case in a different light. You have to keep in mind, too, that this was a shootout among multiple parties, and there's no dispute that the person who died fired the first shot. I think there's the fact of the matter is that with all of this evidence, it would have cast the case in a totally different light by suggesting that this whole case was manufactured by Jeffrey Shockley to get himself out of trouble because he had a pending charge at the time. And to benefit, he got moved out of his neighborhood to an apartment in St. Louis County at the What was the district court's attitude toward the nondisclosure of the payments? The district court conceded that there was a Brady violation and held that it was not material. And I don't think there could be any dispute that that was Brady material and it was suppressed because the record's clear it wasn't provided to us until there was some evidence came to light during the hearing, and then I think the attorney general got access to these documents that became part of the record, canceled checks. I'm sorry, go ahead. And so that's how it came to light. What's wrong with the district court's conclusion that it was not material? Because I think it would have, for one, I don't think the court considered it in conjunction with the other due process claims, but I think the court erred, I think, in overstating the strength of the state's case and also the way that this evidence could have been utilized to, I think, utterly destroy Mr. Shockley's credibility. When you also look at the facts where it's clear that his attorney continued his pending felony drug and weapons charges until after the trials of Mr. Shockley and his co-defendant, and there's a notation in his files that the district court notes at page 24 of the opinion that his attorney told Shockley he would benefit from testifying and he would continue his pending case until after the trial was over, and his notes indicate that, that were disclosed. And I think the court also made a mistake that there has to be some sort of tacit agreement and there are two, any understanding or hope for leniency is admissible. And interestingly enough, there was a case a few years ago from the Supreme Court of Missouri where they found reversible error on a direct appeal because the defense attorney was not allowed to cross-examine a prosecution witness about his hope for leniency on a pending charge despite the fact that there was no formal agreement. That was State v. Clark. And then there's a recent opinion written by Judge Higginbotham from the Fifth Circuit in Tassin v. Kane that says there's no requirement of even a tacit agreement. The key issue is that the jury was misled about this witness's credibility. And that's borne out by the testimony of both the prosecutor and the defense attorney that they both knew that Mr. Shockley was going to get probation at the worst and maybe even a dismissal of the charges. And the prosecutor candidly admitted that he didn't make a formal plea offer because he didn't want the jury to use that to downgrade his credibility. And that's precisely the situation. Well, that's not really a damaging admission, is it? Well, I would have thought that it would be usually as a tactic. From my experience, it's better to bring all that out in the open because a jury, I think, is going to wonder about something like that. But it's a common practice. I've seen it so many times over the years, I can barely count them, that they say there is no deal with the witness, and then lo and behold, a week after he testifies, they march him into court and he gets probation or gets some other deal of a similar nature. And I think that's the situation the Missouri Supreme Court discussed in Clark and that Judge Higginbotham's opinion in Tassin suggests. And that view is also supported by the Giglio and Napue cases. Didn't the district court make a finding to the contrary? They found that there was no agreement, which I guess technically may be. Or any hope held out, isn't that right? Pardon me? Or any hope of such an agreement held out? Well, she didn't say that. In fact, if you look at page 24 of her opinion, she basically concedes what I just said, is that there was an understanding that he was going to get probation, even though there wasn't a formal deal. And so I think that's all we needed to show. Did the district court get that understanding, or you did? I may have paraphrased it, but it's on page 24 of the opinion that TAF indicated. TAF was Mr. Shockley's. It was clear he was not going to get anything worse than probation. I think he meant that as a matter of law, that that's what as a matter of law or as a matter of custom was going to happen. Right. Not that it was anything that was held out by the prosecution, but simply as a matter of course of conduct, this is the way these kinds of cases are disposed of. But the jury didn't know that. And that's the whole point. Well, that's a legal custom. I mean, that's known to everybody, presumably, or at least within it can be discovered by us. I don't think your average layman would know that if you've got two pending felony charges. No, but if your lawyer would. Right, right. But that's not the point. The point is what the jury would have believed regarding his credibility. What I'm saying is that those are facts that you have access to. If all that was happening here was the customary disposition of charges, those are facts to which the defendant has access. It's not something that the government has to tell him. But I don't think there's any due diligence requirement to a Brady violation. The Third Circuit in Bank just rejected that in Dennis. That's a bit of an open question. That may be one of the next issues the U.S. Supreme Court takes up. But I see I'm well past my time, and I'd like to reserve the remainder for rebuttal. Thank you. Thank you. Ms. Parker, you may proceed. Thank you. May it please the Court. I'd like to address Judge Logan's question as how do we factor in White v. Steele? I have a lot. I cannot hear you. I apologize, Your Honor. Can you hear me now? Yes. I'll try to speak better into the microphone. Thank you. The question is how do we factor in this other panel's decision? Here, the district court held a joint evidentiary hearing in both Mr. Kanawha and Mr. White's trials. The facts are the same. The district court found that there was no agreement. It's undisputed that there was no formal agreement. But the district court did find that there was no tacit agreement. There was no mutual understanding. Here, the only thing that could possibly be gathered, even though the witness, Mr. Shockley, testified, look, I was going in. I was pleading guilty. I didn't know what was going to happen. I was going to throw myself on the mercy of the court. His defense attorney testified, like I would think most defense attorneys were. The state wasn't willing to give us this deal. I thought maybe the judge would help us. That's not discoverable or required to be turned over by under Brady. That would require the state to somehow know what could have happened or what could have been communicated simply between defense counsel and his client. The district court did not clearly err in making that finding, and a panel of this court has already agreed. Now, as to the undisclosed payments, the district court in the prior panel assumed the material should have been turned over, but it wasn't required under Brady because it's not material. Brady only requires the disclosure of material evidence, and here it wouldn't have been. If this information would have came to light, like the district court had found and the panel agreed, it would have been harmful or could have been harmful to Mr. Connell's defense. The fact that the state's witness two years before trial was threatened and the police had to remove him would seem to support the theory that maybe Mr. Shockley was correct, that he did independently identify both Mr. Connell and Mr. White, and he was being threatened in the neighborhood. That would have hurt Mr. Connell's defense at trial. Additionally, the district court was correct also in concluding that it wasn't prejudicial. There were other evidence in addition to this testimony, including the fact that obviously Mr. Stewart independently recognized and identified Mr. Connell and Mr. White. There was also the other eyewitness testimony that at least corroborated their testimony, not to the extent neither witness could identify the individuals, but they were able to place the three individuals there at the scene. And the fact that Mr. Connell also had a very severely rejected alibi defense. He originally told the police, I don't know where I was, and then lo and behold, when it comes time for trial, he was able to call his grandmother to testify and say he was there. Those additional factors... Counsel, would you refer or discuss the materiality, the facts underlying and the materiality of the undisclosed gun disposal issue? Certainly, Your Honor. Pardon? Certainly. You're asking about the undisclosed gun. First, I'd like to point out... First, I'd like to point out... Oh, I'm sorry, Your Honor. The new issue that was not raised in White, at least not apparently. Correct. And that is the only additional issue here is regarding an alleged perjure testimony claim that Jeffrey Shockley testified that he did not go back and retrieve his gun. First and foremost, correct, that was not discussed in White. However, the district court considered this claim in the context of Mr. Connell's Brady claim that the state failed to disclose the July 1, 2002 arrest in the ballistics. The district court concluded that that information was in fact disclosed. And in support of this testimony, the district court sided to Mr. Connell's own pleadings in the district court that his attorneys filed. Additionally, I'd like to point out, and I think it's most compelling here, is that trial counsel questioned Mr. Shockley at trial regarding this gun. She argued to the jury that Mr. Shockley went and retrieved his gun, that he lied about this. That he what? That he lied about not retrieving the gun. Trial counsel mentioned that in her closing argument in Mr. Connell's trial. So that was already before the jury. So the fact is, is that the jury already had this information in front of it. And as the district court quite correctly pointed out, it was very tangential. You know, the fact that Mr. Shockley may have tossed his gun after this gun fight ensued, and at some point went back and retrieved the weapon, which counsel did elicit that that is his normal practice. In the context of Brady, there's no reasonable probability of a different outcome. Do you think that claim was defaulted? Yes, Your Honor, I do. The independent perjure testimony claim, and I think if Petitioner had timely raised this as his Brady claim, both of those claims would have been procedurally defaulted because he was aware of the factual basis. In a time frame, he could have raised them in state court, and he didn't. The district court seemed to have passed that point over, did it not? She did. She admitted that there were certain aspects that she caused to doubt as to whether or not he should have known or would have known about it. But the district court never concluded that it was or was not procedurally, or that he overcame the procedural bar. She simply utilized what this court allowed him to do, is to go ahead and address the merits of the claim. And indeed, that's what the panel also did. They put a footnote in saying that they were declining to address the procedural bar, excuse me, the procedural bar aspect. But here, even if this court... Counsel, on the facts, am I correct that the disposed gun, an issue on this claim, was not the murder weapon? That is my understanding of the facts, Your Honor. Because this was a gun used to fire at the killers by the friends of Chu. Yes, Your Honor. Namely, Shockley and his companion. Correct. I mean, Stewart. Correct. It does not cast the ultimate conviction in any, I guess, even underneath the perjury testimony standard, which does require the three showings that it was false, that the state knew about it, which has not been proven or alleged here, and that it would have affected the outcome of the verdict. You're correct. It wasn't deemed as the murder weapon. And as I said, I mean, the fact that the jury already was informed that Shockley may have been less than honest, that he claimed that he tossed the gun and he didn't go back and retrieve it, it was not material. It did not affect the outcome in this case. But really, this court should have paused to really consider these perjury testimony claims. They were not articulated as independent perjury testimony claims in the district court. The district court's analysis, even discussing in the rules of law, did not go into a detailed recitation of a perjury testimony claim and what was required. The judge considered these facts in the context that they were raised in this abandoned Brady claim. Even in Mr. Connell's Rule 59E, he does not raise that the district court erred in rejecting his perjury testimony claims. In fact, he makes no mention of the gun in his 59E motion. The only comment that he makes is that the district court should have considered Mr. Stewart's alleged false identification, which the district court found was not credible and rejected, in the context of Brady materiality on the Brady claims. When the district court granted the motion for reconsideration, in part, on the COA, Mr. Esponte's position that the district court only allowed this appeal to be had on the Brady claims. That did not encompass these perjury testimony claims. But even if this court assumes that the COA should be granted on this topic, and even if this court addresses it to Esponte, this court should certainly find that these claims are procedurally barred. The record, and I will not belabor this, but the record is already replete with trial counsel's knowledge, of the witnesses' knowledge of this, excuse me, of Mr. Connell's knowledge of these claims. They should have been raised. They weren't. There's certainly no cause and prejudice to excuse the procedural default here, and certainly the claims are wholly without merit. If there are no further questions, I would strongly urge this panel to affirm the district court's judgment as a prior panel in White v. Connell did. Thank you, counsel. In my remaining time, I would strongly dispute the fact that this perjured testimony claim was known. I think I addressed that in the reply brief pretty extensively. But the other thing, there is no, even if this was known to trial counsel, which I don't think it was, if you look at the context, all that was known was that Jerome Johnson, who was arrested with Shockley with a gun three weeks later, was a potential witness. But the point is, is there's a lot of case law indicating that the standard, although Brady and NAPU and perjured testimony claims overlap, even if trial counsel knew, even if there was not a Brady violation, the state still has a duty to correct perjured testimony. And I think the key thing with that is that Mr. Craddick, the prosecutor, admitted in his testimony, and it was in the district court's order, that he had those police reports indicating that Shockley lied because he was arrested in a car with the same gun he used that night, but he did nothing to correct it. So I think that, and, and the standard for prejudice for perjured testimony is much more lenient and favorable to the defendant than Brady. Counsel, where was there an evidentiary hearing on the question of knowing use of perjured evidence? It was the joint hearing with Mr. Connell and his co-defendant in September of 2015. We had two days of hearings and the prosecutor. Now I understand where you get the Brady aspect of this. It was in the police reports and that prosecutors are obligated to know that from a Brady standpoint, but that doesn't make it knowing use of perjured testimony. Was that claim before the parties in the court in September, 2015? It was. We made a motion after the hearing under rule 15 to have our pleadings conform to the evidence because there were several curve balls thrown in that hearing. But that was one of them that Mr. What happened to that motion? It was granted. The judge granted the motion under rule 15. And that's in our record. It's on page two of her, her, her opinion. I think it's in a footnote. We, uh, so, uh, and, uh, remarkably, the state hasn't argued that she abused her discretion in doing that. Um, so that issue is fairly before the court. And I think the standard for prejudice is wait a minute, wait, wait, wait, wait. If you didn't, if the pleadings to conform after the fact, don't doesn't give the state and the state an opportunity to address the knowing use question in the pool. You haven't, you haven't, even if this is part of our record, it doesn't tell me that it's ever had a fair, it was ever fairly raised from him so that there was notice and an opportunity to respond. Well, that, that all came out at the hearing and the testimony hearing, the evidentiary hearing, the pro that was fully aired through the prosecutor. Mr. Shockley testified. The prosecutor testified after Mr. Shockley and, uh, admitted that he had this evidence and the, certainly the police knew about it as well, which is all you really have to establish for a knowing use of perjured testimony. But what testimony says that when a, when a witness, when a prosecution witness, uh, surprisingly reveals something prosecutor has some basis to doubt that it may pew versus Illinois and Jiglio versus United States. They have a duty to correct perjured testimony after it comes in. And without regard to materiality, it does. They, that's an, that's a distinct it's that's a distinct issue without, if they know where one of their witnesses is lying, they have a duty to correct it and bring it out. Are you going to answer the question or not without regard to materiality? That's not the, that's not the prosecutor's call. That's something that a review that the trial judge or a reviewing court on appeal that whether it's material or not, that could be debatable, but when the witness lies, I'm sorry, go ahead. Materiality of factor in the pool. I haven't read it for years. You talk materiality and perjured testimony is, is there any reasonable likelihood it could have affected the jury's verdict? Okay. And, uh, the Jackson decision from the ninth circuit re fret, recast that as saying, usually reversal is virtually automatic anytime a prosecution witness commits perjury. Um, I see I'm out of time. If there are no other questions, I'd respectfully request that the court reverse the district court and order a new trial. Thank you. All right. Thank you. Counsel cases submitted.